UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON

UNITED STATES OF AMERICA )
EX REL. JOSEPH )
HARRINGTON and DONALD )
E. FINNEY, and )
COMMONWEALTH OF )
MASSACHUSETTS EX REL. )
JOSEPH HARRINGTON and )
DONALD E. FINNEY )
      Plaintiffs )
)
vs. )
)
AGGREGATE INDUSTRIES, )
INC., f/k/a BARDON GROUP, )
INC., AGGREGATE )
INDUSTRIES-NORTHEAST )
REGION, INC., f/k/a BARDON )
TRIMOUNT, INC., f/k/a )
SIMEON CORPORATION, f/k/a )
J.H. MCNAMARA )
INCORPORATED, f/k/a A S & G )
CORPORATION f/k/a LRM )
CONCRETE, CORP., f/k/a COAST )
CONCRETE CO., INC., f/k/a )
ESSEX BITUMINOUS CORP., )
 f/k/a T & T LEASING CORP., )
f/k/a G & F LEASING CORP., )
f/k/a B N T SAND AND GRAVEL )
CO, INC., f/k/a CONCRETE )
SERVICES, INC., f/k/a HOT-TOP )
PAVEMENTS INCORPORATED )
f/k/a NEEDHAM SAND AND )
GRAVEL COMPANY, )
MIDDLESEX MATERIALS, )
INC., f/k/a AGGREGATE )
INDUSTRIES ACQUISITI, )
AGGREGATE INDUSTRIES )
ACQUISITI, f/k/a BARDON )
TRIMOUNT, INC..f/k/a SIMEON )

No: 05-11364WGY

Judge William G. Young
FILED UNDER SEAL

| | |
|---|---|
| CORPORATION, f/k/a | ) |
| MIDDLESEX MATERIALS, LLC, | ) |
| f/k/a MIDDLESEX PAVING | ) |
| CORP., f/k/a HIGHWAY PAVING, | ) |
| INC., f/k/a SAROA BROS., INC., | ) |
| And BARDON TRIMOUNT, INC., | ) |
| f/k/a A S & G CORPORATION | ) |
| f/k/a LRM CONCRETE, CORP., | ) |
| f/k/a COAST CONCRETE CO., | ) |
| INC., f/k/a ESSEX BITUMINOUS | ) |
| CORP., f/k/a T & T LEASING | ) |
| CORP., f/k/a G & F LEASING | ) |
| CORP., f/k/a B N T SAND AND | ) |
| GRAVEL CO, INC., f/k/a | ) |
| CONCRETE SERVICES, INC. | ) |
| f/k/a J.H. MCNAMARA | ) |
| INCORPORATED. | ) |
| _____Defendants_____ | ) |

## AMENDED
## VERIFIED QUI TAM COMPLAINT

Plaintiffs, Joseph Harrington and Donald E. Finney, ex rel. and on behalf of the United States of America, and the Commonwealth of Massachusetts through their undersigned attorney, alleges as follows in their Complaint:

## JURISDICTION AND VENUE

1. This action arises under the False Claims Act, as amended, 31 U.S.C. § 3729-3733, and at Massachusetts G.L. c. 12, sec. 5A, et. seq. and at common law. This Court has subject matter jurisdiction over this action under 31 U.S.C. § 3730(a) and (b) and 28 U.S.C. § 1331 and 1345.

2. This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a). Venue is proper under 28 U.S.C. 1391(b) and 31 U.S.C. § 3732(a). The

defendants can be found to reside, and transact business within the district, and the acts that violate the provisions of 31 U.S.C. occurred within this district.

3. This Court has diversity jurisdiction over the parties including the Commonwealth of Massachusetts and the defendant Aggregate Industries, a foreign corporation.

## THE PARTIES

4. The plaintiff, Joseph Harrington ("Harrington") resides at 3 Blossom Street, Woburn, Massachusetts. At times relevant to this Complaint, Harrington was a truck driver employed by the defendant, Aggregate Concrete, Inc., and has personal knowledge regarding the pertinent facts supporting the underlying Complaint.

5. The plaintiff, Donald E. Finney ("Finney") resides at 47 North Beacon Street, Allston, Massachusetts. At all times relevant to this Complaint, Finney was a truck driver employed by the defendants, and has personal knowledge regarding the pertinent facts supporting the underlying Complaint.

6. The defendant, Aggregate Industries, Inc., ("Aggregate, Inc."), is a foreign corporation, duly organized and existing under the laws of the state of Delaware, doing business in the Commonwealth of Massachusetts with a principal place of business at 1715 Broadway, Saugus, Massachusetts. At all relevant times hereto,

Aggregate, Inc.'s business purpose was to "[m]anage business activities of subsidiary companies within and without Massachusetts". The subsidiary companies under Aggregate, Inc.'s management control at all relevant times are defendants, Aggregate Industries-Northeast Region, Inc. and all defendant wholly-owned subsidiaries and subsequently merged companies named herein. At all relevant times hereto, Aggregate, Inc. was formerly known as Bardon Group, Inc., a foreign corporation, duly organized and existing under the laws of the state of Delaware, doing business in the Commonwealth of Massachusetts with a principal place of business at 70 Blanchard Road, Burlington, Massachusetts,. until October 31, 1997 when it changed its corporate name to Aggregate, Inc..

7. The defendant, Aggregate Industries – Northeast Region, Inc., ("Aggregate Region"), is a corporation, duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business at 1715 Broadway, Saugus, Massachusetts. At all relevant times hereto, Aggregate Region contracted with the main contractor, Modern Continental, Inc. ("Continental"), as a sub-contractor for the project known as the "Big Dig" (the "Project"), to provide concrete and related materials in addition to providing labor in the delivery and utilization of said materials for the project phase of construction of slurry walls. Defendant, Aggregate Region was formerly known as Bardon Trimount, Inc. until a corporate name change on June 1, 2001. Bardon Trimount, Inc. was formerly known as Simeon Corporation until a corporate

name change on December 27, 1991. Simeon Corporation was formerly known as J.H. McNamara Incorporated, divided its shares between remaining its present entity as the parent corporation with the aforementioned names change(s), and issuing its remaining shares to become a wholly owned subsidiary of the parent company (presently Aggregate Region) that eventually merged with same, infra. The following corporations that were duly incorporated in the Commonwealth of Massachusetts were formerly wholly owned subsidiaries of Aggregate Region and have, as of the date of this Complaint, merged with Aggregate Region: A S & G Corporation, (merged 4/1/96), LRM Concrete, Corp., (merged 4/1/96), Coast Concrete Co., Inc., (merged 4/1/96), Essex Bituminous, Corp., (merged 12/31/96), T & T Leasing, Corp., (merged 12/31/99), G & F Leasing, Corp., (merged 12/31/99), B N T Sand & Gravel, Co., Inc., (merged 12/31/99), Concrete Service, Inc., (merged 12/31/99), Hot Top Pavements, Incorporated, (merged 6/7/01), Needham Sand and Gravel Company (merged 5/7/02), J.H. McNamara Incorporated (merged 4/1/96). Defendant, Aggregate Region was paid for its services and material through its contract with Continental with proceeds deriving from the Commonwealth of Massachusetts and the United States government.

8. The defendant, Aggregate Industries Acquisiti., ("Aggregate Acquisiti"), is a corporation, duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business at 1715 Broadway, Saugus, Massachusetts. At all relevant times hereto, Aggregate Acquisiti's business purpose "is to manufacture, buy, sell, store and to generally deal in and with

construction material and machinery, to engage in manufacturing, quarrying, paving, milling...construction and industrial works and operations". Further, at all relevant times hereto, Aggregate Acquisiti contracted with the main contractor, Continental, as a sub-contractor for the Project to provide concrete and related materials in addition to providing labor in the utilization and delivery of said materials for the project phase of construction of slurry walls. Defendant, Aggregate Acquisiti was formerly known as Bardon Trimount, Inc. until a corporate name change on June 1, 2001. Bardon Trimount, Inc. was formerly known as Simeon Corporation until a corporate name change on December 27, 1991. Defendant, Aggregate Acquisiti was paid for its services and material through its contract with Continental from proceeds deriving from the Commonwealth of Massachusetts and the United States government.

9. The defendant, Middlesex Materials, Inc., ("Middlesex"), is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business at 1715 Broadway, Saugus, Massachusetts. At all relevant times hereto, Middlesex contracted with the main contractor, Continental, as a sub-contractor for the Project to provide concrete and related materials in addition to providing labor in the delivery and utilization of said materials for the project phase of construction of slurry walls. Defendant, Middlesex was formerly known as Aggregate Industries Inquisiti until a corporate name change to Middlesex on June 11, 1999. On December 31, 1999, Middlesex merged with Middlesex Materials, LLC., a foreign corporation duly organized

under the laws of the state of Delaware. Also on December 31, 1999, Middlesex merged with Middlesex Paving, Corp., ("Middlesex Paving") formerly known until August 25, 1992, as Highway Paving, Inc. ("Highway") which was formerly known until March 11, 1982 as Sarao Bros., Inc. ("Saroa). Defendant, Middlesex was paid for its services and material through its contract with Continental from proceeds deriving from the Commonwealth of Massachusetts and the United States government.

10. Defendant, Bardon Trimount, Inc., ("Bardon Inc.") is a corporation duly organized under the laws of the Commonwealth of Massachusetts with a principal place of business c/o Ropes & Gray, 1935 Parkway, Everett, Massachusetts. The following corporations that were duly incorporated in the Commonwealth of Massachusetts were formerly wholly owned subsidiaries of Bardon Inc. and have, as of the date of this Complaint, merged with Bardon Inc.: A S & G Corporation, (merged 4/1/96), LRM Concrete, Corp., (merged 4/1/96), Coast Concrete Co., Inc., (merged 4/1/96), Essex Bituminous, Corp., (merged 12/31/96), T & T Leasing, Corp., (merged 12/31/99), G & F Leasing, Corp., (merged 12/31/99), B N T Sand & Gravel, Co., Inc., (merged 12/31/99), Concrete Service, Inc., (merged 12/31/99) and J.H. McNamara Incorporated (merged 4/1/96).

## FACTS PERTAINING TO ALL COUNTS

11. Plaintiffs repeat and reallege paragraphs 1 through 10 of this Complaint as if fully set forth herein.

On or about 1996 to 2000, defendants contracted with, the main contractor, Modern Continental, Inc., ("Continental") as a sub-contractor to supply concrete and related materials in addition to labor for the Project, to specifically construct the foundations of all tunnels using the engineering concept called "slurry walls" for all tunnels operated and maintained by the Central Artery Commission ("CAT"), including but not limited to, the Central Artery and Purchase Street Tunnel.

12. The structural logic of the slurry wall engineering design to be constructed by the defendants, was to construct a slurry wall foundation that the roof and floor slabs of the tunnels would be dependant upon. The slurry wall connection would support the pressure and weight using 0.9m (36") I-section soldier piles embedded in the nominal 1.07m (42in) thick slurry wall at 1.2m to 1.8m (4ft to 6ft) intervals. The design called for the defendant to drive soldier piles into the bedrock. The floor sections were then poured on undisturbed ground where its weight did not bear on the ground below but formed a beam similar to the roof which bears on the piles in the walls. The roof slab was to be built on a steel I-beam girder which was to be bolted into the soldier piles and would be loaded with as much as 24m (80ft) of fill. Between each I-section soldier piles would be cages of epoxy-coated rebar that were designed to be inserted in order to strengthen the wall and limit the hydration (water) cracking of the concrete.

13. The trench for the slurry wall was to be adequately cleaned in order to prevent the end stop from allowing soft material inclusion such as debris, mud and muck to compromise the foundation in the area where concrete was poured into the slurry wall frame by tremei pipe which then displaced slurry material contained therein as the concrete was poured.

14. The concrete was improperly poured by the defendants through tremie concrete placement by using a single tremie pipe, which was performed by the defendants without permission from the site engineers and overseers and inter alia constitutes an unacceptable contract deviation. The inevitablely flawed result by the use of a single tremie pipe for concrete placement of the slurry wall construction was discovered to cause an unbalanced concrete load on the center pile, further causing the slurry wall to ultimately crack and allow the penetration of contaminants that should have been forced out of the excavation with proper concrete placement. Moreover, the recent discovery of vertical seams of loose soil found in the slurry walls was also caused by defendants' unacceptable method of the use of a single tremie pipe, which further caused loose soil adjacent to the pile to penetrate the foundation and ultimately compromise the stability of the entire slurry wall foundation and its design purpose to prevent water penetration into the recently discovered seams and cracks.

15. During the construction phase of the slurry walls, defendants were hired to mix, deliver and pour concrete at all slurry wall locations. The slurry walls were

constructed on top of the bedrock above the foundation, sometimes at an excavation depth of eighty (80) feet. The slurry wall panels and sections measured the length of thirty (30) feet wide.

16. The slurry wall design and construction plan called for defendants to pour a mixture of cement, stone, aggregate and water though tremie pipe placement into the slurry wall frame, which contained slurry material that would be displaced as the concrete was poured.

17. The material specifications required that the cement trucks deliver their loads at a maximum of eleven (11) yards per truck, within the contract and manufacturer's specification of no longer than ninety (90) minutes. Any period of time beyond the ninety (90) minute window, required the defendants to discard the load contained in the truck, thereby prohibiting the use of same for the Project.

18. If the cement mixture carried by the trucks exceeded the ninety (90) minute time frame resulting in an unacceptable cement load being used for the slurry walls, then the integrity of the cement mixture would have compromised the structure, in that it would have set and solidified as it was poured down the tremie pipe, resulting in the defective and unstable material to cause a contamination of the foundation. This would have resulted in the failure of the cement mixture to set and harden properly and would have led to unbalanced loading, unstable foundation, presence of contamination, ultimately leading to the present problem

of the slurry wall cement cracking and crumbling in the face of water pressure that is permeating the entire structure.

19. Upon information and belief, as a result of the presence of the contamination in the slurry wass cement, the cracking and crumbling cement have lead to leaks and ultimately caused the panel walls and roofs to crack and discharge water and debris, creating a public safety risk and the implementation of extremely expensive and time consuming remedial measures.

20. Upon information and belief, the plaintiffs allege through personal knowledge that it was defendants' protocol and directives, that caused them to deliver contaminated and expired concrete materials, despite the expiration of the ninety (90) minute time frame required by the contract.

21. Upon information and belief, as a result of the delivery of contaminated and expired concrete materials, there were several problematic tremie concrete placements where, on numerous occasions, the premature setting and solidifying of the concrete mixture delivered by their trucks had begun to materialize before the tremie placement had been removed. Plaintiffs allege that the concrete material was poured through the tremie pipe that was seriously compromised via time constraints in some instances, for up to two(2) hours after the acceptable time frame (90 minutes) had expired.

22. In some instances, the concrete mixture had solidified while still in the tremie pipe, prior to the mixture reaching the slurry wall foundation. In one instance known to the plaintiffs, the tremie pipe was cemented solidly into the slurry wall and surrounding areas, making it impossible to remove same. The defendants elected to leave the tremie pipe in the panel and cover it with cement and materials to prevent its detection where it remains today. The location of this tremie pipe is currently found in the A-6 panel of the Purchase Street tunnel and serves as prima facie evidence corroborating plaintiff's averments in this complaint. The batch report from this incident had been altered to conceal the foregoing true sequence of events.

23. In addition to knowingly using defective and expired concrete mixture during the construction of the slurry walls of the Project, defendants also used gravel material from a prohibited area located at their Dorchester plant. The Dorchester plant was prohibited as a source of gravel and material and this was known by the defendants and a requirement of the contract.

24. Upon information and belief, the defendants used the Dorchester plant as a source of materials despite their contractual obligations. The defendants knew the materials at the Dorchester plant to be poor quality as it was not mixing quality cement. The mixture from the Dorchester plant created what is known as "meatballs", a poor quality cement mixture that did not set well and was known by the defendants, as a material source which was prohibited by the Continental.

25. In addition to knowingly using defective, expired compromised and raw materials from a proscribed location, plaintiffs, have personal knowledge that defendants were fraudulently converting materials and cement mixtures for other private and public jobs for their defendants' personal gain. That is, defendants were pilfering, misappropriating and embezzling materials purchased by the CAT for private and public jobs in which they received additional unlawful compensation.

26. In addition to converting publicly owned materials for their own private use and financial gain, plaintiffs have personal knowledge that any remaining materials within the truck used to misappropriate for private jobsites, were either brought to the Project for use, well beyond the ninety (90) minute time specifications, or returned to defendants' material storage area to be mixed with new concrete mixture, thereby mixing the expired concrete materials with a contaminated mixture left over from a private job.

27. Upon information and belief, plaintiffs allege through personal knowledge that the defendants knowingly issued slips to drivers with expired cement loads. On occasions where the drivers would be sent back to the plant because the cement was discovered to be expired, because it was well beyond the ninety (90) minute time limit, the defendants through their agents would issue new batch slips falsely indicating that the load was now fresh. The driver would then deliver the expired load, but deliver a batch slip that indicated it was within the time period.

28. The foregoing fraudulent acts by the defendants were concealed by altering batch reports, invoices, and driver's logs and other relevant documents in order to conceal and avoid detection of their fraudulent acts and unlawful regulatory violations which were performed in deliberate ignorance or reckless disregard of the truth or falsity of the documents submitted. Defendants also withheld accurate information from site supervisors, engineers and overseers that also served to conceal their fraudulent acts.

29. Upon information and belief, defendants conduct alleged in paragraph 22 of this Complaint was discovered by Continental. Sometime in May, of a year unknown at this time, a meeting was held on Broad Street, Boston, Massachusetts, between representatives of defendants and Continental, whereby the following individuals inter alia were in attendance and have personal knowledge of the substance of said meeting: Anthony Timmons, Gregory Stevenson, Robert Prosperi, Robert Peckham, Chad Gruff, and Jerry McNally. Upon information and belief, the substance of the meeting was to discuss the tremie pipe lodged in the A-6 wall panel of the Purchase Street tunnel. Upon information and belief, the meeting resulted in a decision by the parties to keep the tremie pipe concealed in the A-6 wall and to alter and falsify the batch reports and relevant documents to conceal this material defect. Also, upon information and belief, Continental expresses a dissatisfaction with the pace in which defendants were performing under the contract. In addition, Continental reached an agreement with defendants whereby

defendants agreed to indemnify Continental for any damages or remedial costs to repair the defect in the event it is discovered.

30. Since the beginning of defendants' contract with Continental, defendants had knowledge of the foregoing acts as fraudulent and acted with intentional disregard of the truth, causing the Commonwealth of Massachusetts and the United States government damage.

## COUNT I
### FALSE CLAIMS ACT, 31 U.S.C. § 3729 (a) (7)
### Claim Presenting False or Fraudulent Claims
### (Relators' Reward Claim Under Qui Tam
### and Any and All Alternative Remedy Provision)

31. Plaintiffs repeat and reallege paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32. The defendants submitted false and or fraudulent claims, reports and statements to several agencies and administrations of the United States government and the Commonwealth of Massachusetts at various times throughout the term of their contract with the general contractor, Continental in the performance of their obligations relative to the Project. The precise number of said fraudulent acts and amount of damages shall be determined through discovery and proven at trial.

33. The defendants knowingly presented or caused to be presented to the United States government and the Commonwealth of Massachusetts false or fraudulent

        statements and claims for the purpose of concealing their embezzlement, larceny and breach of contract in violation of 31 U.S.C. § 3729 (a) (7) and M.G.L. c. 12 §5B.

34.     As a result of the defendants' conduct, the United States and Massachusetts suffered actual damages.

### COUNT II
### Common Law Fraud
### (Relators' Reward Claim Under Qui Tam
### and Any and All Alternative Remedy Provision)

35.     Plaintiffs repeat and reallege paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36.     The claims and documents submitted to the United States and Massachusetts government supporting and furthering defendants' effort to conceal their contractual breach and embezzlement were in fact false and intentional material misrepresentations of material fact.

37.     The defendants' caused these misrepresentations to be made with knowledge of their falsity or with reckless disregard for the truth.

38. The United States and Massachusetts governments, acting in reliance on the defendants' misrepresentations, remitted money, and upon information and belief, paid money in excess of the contract terms, to defendants for payment of their performance for labor and materials for the Project.

39. As a result of the defendants' conduct, the United States and Massachusetts governments have been damaged in an amount to be determined at trial.

## COUNT III
## Unjust Enrichment
### Relators' Reward Claim Under Qui Tam
### and Any and All Alternative Remedy Provision)

40. Plaintiffs repeat and reallege paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. As a result of the defendants' conduct described in the foregoing paragraphs, the defendants caused to conceal their contractual breach and embezzlement and/or otherwise received money from the United States and Massachusetts governments.

42. As a result of the defendants' conduct described in the foregoing paragraph, the defendants have been unjustly enriched at the expense of the United States and Massachusetts government and circumstances dictate that in equity and good

conscience, the obligation to repay the United States and Massachusetts government should be satisfied.

WHEREFORE, plaintiffs, demands judgment against all defendants, jointly and severally in an amount to be determined at trial, plus interest, costs and attorney's fees and any such award this Court deems fair and proper. In addition, the relators in this matter request the award set forth in the provisions of the Federal False Claims Act, and any other Alternative Remedy Provision thereto.

We, Joseph Harrington and Donald E. Finney certify that we have read the foregoing complaint and swear under the pains and penalties of perjury that the facts asserted are truthful to the best of our knowledge on this ____ day of June, 2005.

_____          _____
Joseph Harrington                                              Donald E. Finney

PLAINTIFFS CLAIM TRIAL BY JURY ON ALL APPLICABLE COUNTS.

Plaintiffs/Realtors Ex. Rel.
United States and Commonwealth of Massachusetts,
Joseph Harrington and Donald E. Finney,
By Their attorney,

_____
Susan McNeil, Esq.
BBO#: 564831
101 Amesbury Street, Suite 104
Lawrence, MA 01840
(978) 975-1661